Good morning, your honors. This case involves a rather unusual factual situation where even the state court agreed that the victims had initially consented to their confinement because there was an agreement that they would stay with their smugglers until payment had been made for their passage from Mexico. And the factual dispute is only whether they continue to consent or whether at some point the consent was withdrawn. And under such factual circumstances, a reasonable jury could easily have found in defendant's favor. And therefore, it was an unreasonable application of federal law to refuse a jury instruction that consent is a defense to the crime of kidnapping for ransom. And similarly, in regards to the element of lack of consent as being an element of the crime of kidnapping for ransom, California law appears to recognize that lack of consent is an element of the crime of kidnapping. And so it was an unreasonable application of federal law and a violation of due process not to allow that instruction. And as far as harmless error analysis is concerned, it is petitioner's position first that the harmless error does not apply because there was a structural defect in this case in that there were two instructional errors. And the combination of the two errors made the trial so fundamentally unfair that it was a structural defect. And the case of Condi v. Henry seems to support that view because in that case, there were several errors, including instructional error in regards to a defense and instructional error in regards to an element of the offense. And the court found that with a combination of these errors, there was a structural defect that defied harmless error analysis. But even if harmless error does apply in this case, it's clear that there was — that the error was not harmless because there was plenty of evidence that the victims could have consented. And because of the instructional errors, the jury could not consider an element of the crime of kidnapping, and they also could not consider a defense. And had — if those things had been presented to the jury. Kennedy. I'm sorry to say that it's an element of the crime. Now, is it really an element of the crime? Well, it's certainly a Petitioner's position that it is because there were several California cases that support that view. Some of them — Are those kidnappings for ransom? Well, I believe two cases were in regards to simple kidnapping, but there's really no reason to distinguish between simple kidnapping and kidnapping for ransom. The elements are different. In other words, kidnapping for ransom doesn't require aspiration. That's — That's true. But especially in this case where the lack of consent involved whether the — whether the victims were confined against their free will, it — there's really no — there's really no distinction in that being confined against your will implies a lack of consent, and especially in view of the kind of theory in which they were prosecuted, it should have been presented as an element of the crime. Whether it would be an element of the crime in all — in all factual circumstances involving Penal Code 209 is an open issue, but certainly in this case where the issue was whether they were confined against their will, it should have been considered an element of the crime. And therefore, as I said, it's Petitioner's position that harmless error does not apply, but even if it did, the error was not harmless because there was substantial evidence that the victim — that there was an agreement in which the victims would stay with the smugglers until the smugglers were paid, and therefore, the jury could very well have found in Petitioner's favor. What do we do with the jury finding that they were confined against their will? Well, that involved the conspiracy charge, and they're just — they were never presented with the issue of, you know, whether they could — you know, in terms of a defense, and they were never presented with the issue in terms of lack of consent being an element of the crime. So it's kind of speculative to say what the jury would have found if they had actually been presented with those jury instructions. I'd like to reserve the rest of the time unless the Court has some questions. No, you may reserve. Thank you. May it please the Court. Deputy Attorney General Margaret Maxwell on behalf of Respondent Rowe. Although it's Petitioner's contention that lack of consent is an element of a violation of Section 209, Subdivision A, the statute itself does not expressly require a lack of consent. A lack of consent is not included in the standard jury instruction that defines the crime for us juries, and that is CALJIC 9.53. There's no published California opinion that states that lack of consent is an element of kidnap for ransom. That's in contrast to the simple kidnapping, which is a different code section, which is 207. Why would there be a difference? Well, because the crimes are different. There are different elements of the offenses. 207 includes an element of aspirtation that's not required for kidnap for reward ransom or extortion. I think it's important to note that 207. But that would have to do with whether consent to the aspirtation or consent to being held. It seems to me that they're pretty similar, that if it's required for one purpose, it's required for the other. Well, I think this comes to the position of the statute, which is it's a single offense that can be committed in a variety of ways. And if you look at the many different ways that the crime can be committed, it lists some things that would implicitly require a lack of consent, being held, being detained, being kidnapped, which is similar to a kidnapping. But it also includes elements such as inveigling, enticing, concealing, lots of ways to commit the crime, not all of which would require that the subject of the crime be held against their will at all or that they lack consent in doing so. So we're talking theoretically, Petitioner's position is that, well, here, the theory that was being presented was that they were held and detained. And what we have to look at for an element of the crime is what the statute and what the crime entails, and the crime itself does not include a lack of consent. I'd outline the various components that indicate that there's been no express determination that lack of consent is an element of 209A. In contrast, we do have an express, an explicit determination by the trial court in this case that lack of consent is not an element of Section 209A. And that's a determination that I think is due some deference in the EDPI analysis. Essentially, what Petitioner asks is that this Court should engraft an element that isn't, that hasn't been determined by the California courts and its Respondent's position that the Court should decline to do so. In contrast, we have the question whether lack of consent is an element of the crime, and then we have, well, is consent a defense to the crime? Here, the trial court concluded that it would instruct the jury on consent, and it actually gave an instruction defining consent. That was Calgic. But it was only defining. Was there an instruction that said that consent is a defense? All it is, is just define what a consent was. That's true. Calgic 1.23 actually, though, did mirror nearly exactly one of the instructions that Petitioner requested, which is 9.56, with the exception of the reference to aspiratation and, I believe, with the exception of the first sentence. Essentially, what happened below is the trial court gave an instruction defining consent to the jury, and then put no bars on any of the parties arguing how that instruction should be applied to the case. Yes, but the Court didn't instruct that that would in fact be a defense. That's true. But I think that that was unavoidable as far as what the jury would take away from getting the instruction and what the arguments of the parties were. I mean, everyone agreed below that there was some initial consent on the part of the three cousins. They contracted with some smugglers to be brought into the United States illegally, and at least in the beginning, I think, planned to stay with the smugglers until the smugglers were paid by their relatives. However, things changed. And when there was a dispute over the amount of money that was paid, the cousins were threatened to be killed. One of them was threatened with a rape. And those are circumstances I think were not within the contractual terms that were originally agreed upon. So certainly, at some point, whatever initial consent existed evaporated completely. The district court below looked at the Greenberger decision, People v. Greenberger, to make a finding that perhaps consent could be a defense to kidnap for ransom. The Greenberger case dwells on the subject for a matter of lines and essentially concluded that in that particular case, no, the lack of instructions on consent as a defense was not error, given the overwhelming evidence that whatever initial consent existed in that case had evaporated as well by the time of the ultimate crime was concerned. And in Greenberger, there was a – the victim, Raiden, was lured into a limousine by Defendant Greenberger and her co-defendants under false pretenses and at some point was then detained and held and ultimately murdered. And again, we are talking about California and how California law defines the elements of the crime and defenses to its own crimes. Let me just ask you about that. To this date, no California court has ever ruled whether or not kidnapping for ransom, et cetera, has an element of lack of consent. When I checked last night to see if anything might have developed, and I couldn't find anything on a search, in a Westlaw search, just to make sure nothing had happened. So the answer is no case has held that lack of consent is an element of a violation of 209A. All right. But the Caljic instructions make a distinction. The Caljic instruction 9.53 is the instruction for kidnap for ransom reward or extortion. That's 209A. And 5 – 9.56 would be one of the instructions that would apply for simple kidnapping, 207, and also 9.58, which has the language consent as a defense to kidnapping and has the different ways that it can happen. That also applies to simple kidnapping as well. The 9.58 discusses consent as a defense to kidnapping, which is a general-intent crime. And here the statute required that the jury find that the Petitioner acted with a specific intent to hold and detain. And the jury was instructed that that's what they had to find and did so. So I think given the instruction that they must find that he had the specific intent to hold and detain the three cousins, and then when they were told, well, you know, here's what consent is, and if you're voluntarily there, then, you know, you're not essentially held, that's common sense. The jury didn't necessarily resolve this question adversely to Petitioner. And that is, I think, most manifest in the special verdict that goes to the conspiracy party. Let me follow up. Who is authorized to enact the California jury instructions? Are they adopted by the legislature? To my knowledge, they're not. It's the Judicial Council that promulgates them. There's a complicated procedure that is undertaken to approve them, and there's a committee with very esteemed members of the bench and bar that participate in that. But they're not subsequently approved by the legislature. To my knowledge, no, but I'm not 100% confident. We're way into Teague, but there could be an issue that whoever set forth the regulations didn't, I mean, the jury instructions in Calgic didn't do it correctly, that consent should have been included in the instruction, or shouldn't have been. I mean, either way, because the statute, neither statute actually talks about consent. That's true. Neither statute expressly mentions lack of consent as an element. However, the California courts have interpreted 207 to require a lack of consent for the movement and aspitation element, and that has not been the case for 209. So, you know, we're left with the legislative enactment, which may not be perfect, but it's what we have, and then we have the California courts working with that legislative enactment, and none of them have held that lack of consent is an element. And the closest we have... You had about started to talk about something that your opponent had mentioned on the consent question, which was the jury's finding that the cousins were confined against their will, and her response was, well, that was the conspiracy charge. And you had started to mention that. Do you think that's a good defense to the argument that the jury's finding shows that they knew there was no consent here? Well, certainly the California court of appeal reached that conclusion because it relied on that finding in concluding that any omission of an instruction, whether the instruction be as an element of the offense or the instruction be as to something different as a defense to the charge, was harmless under any standard. And I do believe that that's a finding that Responda can rely on as far as the only evidence of what the jury was in the jury's mind. And the jury determined, specifically checked that it concluded that the conspirators, which included Petitioner, held the cousins against their will. And... But there was a charge that did not charge besides conspiracy. Yes. Conspiracy was a count one charge, and then there were three charges of kidnap for ransom charges. And ultimately, Petitioner was acquitted of. I guess the position I was detecting from your opponent was that, well, since that finding wasn't made in the basic charge, it doesn't carry over from the conspiracy charge. I think that's where she was going. If that's where she was going, I think that that's not a reasonable position to take. The verdict for the kidnapping, which you sort of have the kidnap for ransom charges, simply says, you know, guilty or not guilty. It doesn't include that special language. That special language did appear in the conspiracy count in the overt acts section where they had to say which overt acts they found true. So the jury wasn't asked to check that box on its verdict for the kidnapping for ransom, but it would make no sense to say that there was consent to the kidnap, but yet the cousins were held against their will. Those are just two completely unreconcilable positions. So I think you can actually look at the verdict for the kidnapping for ransom, the overt acts findings to assess what was going on in the minds of the jurors when they ruled on the kidnapping for ransom charges. But the conspirators can be guilty of conspiracy without being separately without separately being guilty of the underlying charge. In other words, conspiracy is a separate charge, separate factors. And even though a conspirator doesn't commit the basic crime, that conspirator can be guilty of conspiracy. Isn't that correct? I believe I'm following. I believe yes. I mean, I'm gathering this from the argument that simply by finding these people guilty of kidnapping may not carry over to a finding of guilty of conspiracy may not carry over to the finding of guilty in the underlying charge. I'm not saying I agree. I just think maybe that's the argument. Well, I think certainly just a conviction for kidnap – I'm sorry, a conviction for a conspiracy wouldn't equate necessarily with a finding of lack of consent or being held against their will for the kidnap for ransom. But here we have a specific finding as to one of the overt acts which indicates by the jury that they found that the cousins were held against their will. So it's not simply the guilty verdict on the conspiracy that was being relied upon. It was a special finding subsumed within that count. In other words, I was kind of following along with just Nelson's argument. You could conspire to hold somebody against their will even though they weren't actually held against their will. Exactly. So you could be guilty of that. But your point is that having found it specifically in an overt act is something different. Yes, absolutely. I would like to mention briefly, if I may, or address an argument by Petitioner concerning the harmless error analysis. Petitioner seems to be arguing that there was a combined error here that rendered this particular error for errors structural in nature. And I took a quick look, but I wanted to be sure. But that particular argument was never presented to the California courts, and it wasn't presented below. It sounds like a cumulative, sort of a cumulative error argument as opposed to an argument that any one particular error would be structural in nature. As to each separate instructional problem here, there is established Federal law that this is subject to harmless error analysis. If on direct appeal, it would be subject to review under the beyond a reasonable doubt test, articulated in Chapman v. California. That particular standard appears to have been applied implicitly by the California Court of Appeal when it concluded that any error was harmless under any standard of review. And here we have the, you know, additional layer of habeas review. So the argument or ultimately the final determination would have to be whether under Brecht there was a substantial injurious effect on the verdict. But here what we have is the California courts concluding that this error was harmless, and I think as a preliminary matter, if this Court agrees that that determination was not an unreasonable application of Federal law, then that could end the inquiry. That appears to be what the California courts did. It's supposed to get into the nitty-gritty of whether or not this is an element and to go through a long analysis. They took a shortcut, which brings us here, I think. Kennedy, looking at it aside from the harmless error standpoint, one of the things that troubles me about the defense of consent is that the Court never did say that consent is a defense to these crimes. And I don't know if that was ever proposed as an instruction or not. I can answer the latter question. No. The what was proposed, three instructions were proffered by the defense. One was 9.56, which included the aspiratation language, so it's not applicable. 9.58, which did have the consent as a defense language, but it had not only aspiratation language, but the general criminal intent language, which is wholly inapplicable to this crime. Then there was a recess in the proceedings. The defense got together. They proposed a special instruction, which didn't include any of those elements. Essentially, it seemed to state that if the jury found consent, then he who consents to an act is not wrong by it. Thus, if you find the alleged victim voluntarily agreed to be smuggled in the United States and to remain with the smuggler until the smuggler's fees were paid, they have consented to confinement for a time reasonably necessary to accomplish their goal. Interestingly, that proposed instruction doesn't say consented the defense to kidnapping. Even I think Fisher's counsel didn't feel that was going to be necessary to put the jury in the right direction. And that instruction also was deemed to be inaccurate and improper. And the jury – I'm sorry, the Court instructed instead on 1.23, which is very similar to 9.56, omitting the problematic aspects. In sum, the California Court of Appeals' decision here is entitled to deference and its Respondent's position that the rejection of this claim by the California courts was not an unreasonable application of Federal law and was not contrary to Federal law. And on that, I'll submit. All right. Thank you, counsel. If we have some time, we may want to respond. First of all, I believe that it was the California Court of Appeals' conclusion that consent was a defense to the crime of kidnapping. The only problem was that they really didn't analyze that because they immediately disposed of the case on a harmless error review. But they really did not thoroughly analyze that issue. They said that it was harmless under any standard of review. But we don't know what sort of standard they used. They didn't mention that. And the other thing, was there an instruction ever proposed that just simply said that consent is a defense to the crime of kidnapping? Well, you know, there was a special pinpoint instruction. There were the standard instructions that could have been modified, but the Court, you know, chose not to do that. I believe one of the counsels said that, you know, it could easily be modified. And in California, the Court has a ---- You said that the defense proposed a modified instruction. I believe that, yes, the defense did propose that it be modified, but the Court really, you know, cut it short so they didn't get into a long discussion of how. But the Court, you know, basically didn't feel it was necessary to modify the instruction. And yet, a California law, there's a sui sponte duty on the part of the Court to allow any to instruct on any legal issues that are raised by the evidence. And I think the evidence in this case did show consent as a defense, but the Court, the trial court, you know, refused to really look into that issue, did not modify when they easily could have modified any of the instructions. And the court of appeal ---- It's not my understanding that the Court has an obligation to modify instructions. My view of it is that the parties have to submit the instructions that they want to have given. And if they aren't given, object to them. Well, I do believe that the record reflects that Counsel did say that the instructions, you know, could be modified. They wanted it to be modified, but it just got cut short at that point. But it was never submitted to the Court. Well, I believe that, you know, even the instructions as given, you know, could have worked. I mean, there were instructions that were submitted. Yes, but they were all erroneous because it had some erroneous element to them. I don't believe that the special instruction ---- The last location, for example, was in one of them. Yes, but I don't believe the special instruction was erroneous. And they did submit a special instruction regarding consent. I could read it or, you know, it's in the record. But the Court just, you know, refused to instruct. I have nothing further on this. There was an objection to that? I believe there was an objection to the Court's, you know, failure to give an instruction. It's pretty important whether there was or was not. Yes, there was an objection. All right. Thank you, counsel. The bill will turn to you, Rose Smith, and we'll take up Moss v. Smith.
judges: Hug, T.G. Nelson, Wardlaw